OPINION OF THE COURT
Per Curiam.
The respondent was served with a petition containing six charges of professional misconduct. After a hearing, the Special Referee sustained charges four and five and did not sustain charges one, two, three, and six. The Grievance Committee for the Ninth Judicial District (hereinafter the Grievance Committee) moves to confirm so much of the report of the Special Referee as sustained charges four and five, and to disaffirm so much of the report as did not sustain charges one, two, and three. The respondent cross-moves to confirm so much of the report as did not sustain charges one, two, three, and six, and to disaffirm so much of the report as sustained charges four and five. Moreover, the respondent asks that, if discipline is to be imposed, it be limited to a public censure. We find that charges one, two, three, four, and five should be sustained and that charge six should not be sustained.
Charges one, two, three, four, and five emanate from a common set of factual allegations stemming from a loan refinance in which the respondent represented the borrower, PATRA Foods (hereinafter PATRA). The petition alleges as follows:
The respondent represented PATRA in a refinance of loans that had been taken to purchase and construct a diner in New-burgh, New York. The original loans were given by Medallion Bank (hereinafter Medallion) ($625,000) and PMC Construction (hereinafter PMC) ($679,000). In or about May 2002, the Small Business Loan Service (hereinafter SBLS) gave PATRA a loan to pay off the aforementioned debt. By May 2002, the funds owed by PATRA to Medallion and PMC exceeded the loan sought from SBLS by over $100,000. Medallion, having obtained a judgment against PATRA, was owed $746,343.13. PMC was owed $679,000. The two loans totaled $1,425,343.13. The SBLS loan was for $1,304,000, with settlement costs amounting to *101 $97,931.20. Prior to the dry closing on May 7, 2002, the respondent knew, or should have known, that the SBLS loan was insufficient to pay off the Medallion and PMC loans in their entirety. The respondent also knew, or should have known, that SBLS expected to hold the primary loan and be in first position once it funded the loan and the other two loans were paid off. The respondent failed to furnish SBLS with the correct payoff information. During the dry closing on May 7, 2002, the respondent prepared check No. 1626 in the sum of $625,000 from his HSBC Bank attorney trust account No. xxx-xx084-4, naming Medallion as the payee, as proof of the payoff to Medallion. The respondent acknowledged to the Grievance Committee, during its investigation, that check No. 1626 was never negotiated.
At the dry closing on May 7, 2002, the respondent knew that he would not pay off the entire debt of $679,000 that was owed by PATRA to PMC, as evidenced by a side letter agreement with PMC, which showed that PMC would only be paid $300,000 directly. The respondent prepared check No. 1625 in the sum of $679,000 from his HSBC Bank attorney trust account No. xxxxx084-4, naming PMC as the payee, as proof of the payoff to PMC. The respondent acknowledged to the Grievance Committee, during its investigation, that check No. 1625 was never negotiated.
During the dry closing on May 7, 2002, the respondent signed a HUD-1 statement, which contained payoff amounts of $625,000 to Medallion and $679,000 to PMC, despite the fact that he knew these figures were not the amounts that he would pay to these entities. On or about May 8, 2002, HSBC Bank, following the respondent’s orders, wired $733,000 to Medallion and $300,000 to PMC from the respondent’s attorney trust account No. xxx-xx084-4. Between May 9, 2002 and May 24, 2002, the respondent wrote checks on behalf of PATRA from his attorney trust account to entities not listed on the HUD-1 statement. The figures attested to in the HUD-1 statement do not correspond to the actual payments made.
The respondent offered a side letter agreement dated May 7, 2002, as proof that he had authority from PMC to pay them $300,000 and to pay assorted other entities $259,580.55 on behalf of PMC. Of the items listed in the side letter agreement, the sum of $97,558.55 went to other entities as the borrower’s settlement charges. The HUD-1 statement lists the settlement charges as $97,931.20, which was in addition to the $679,000 owed to PMC. The respondent deviated from the side letter agreement with one or more of the following:
*102 (a) The side letter agreement, among other things, allegedly allowed payment to the IRS of $20,600. The respondent did not make this payment.
(b) The side letter agreement, among other things, allegedly allowed payment to Joel Arnau of $45,000. The respondent paid Mr. Arnau $52,625.30 (check No. 1642).
(c) The respondent paid Raoul Felder $17,600 (check No. 1643), which was not listed on the HUD-1 statement or the side letter agreement.
(d) The HUD-1 statement listed legal fees to the respondent of $5,000. The side letter agreement allegedly allowed payment to the respondent of $12,000. The respondent wrote a check to himself for $12,000 (check No. 1629).
(e) The side letter agreement listed a payment of $90,000 to 92 MM Motel, Inc., which was paid by a check written to Rizzo & Kelly, as attorneys (check No. 1644).
(f) PATRA was wired $51,080.55 from the proceeds of the loan. The payment to PATRA was not listed on the HUD-1 statement or in the side letter agreement.
In the respondent’s answer to a complaint by counsel for SBLS, Joan Sternheimer, he states that PMC “was paid a total of $559,580.55. The borrower’s debts were satisfied.” Upon information and belief, PMC only received $300,000 on account and received a new note representing the difference owed, to wit, $548,000. PMC subsequently recovered a judgment against PATRA and entered into a stipulation of settlement.
Charge one alleges that the respondent is guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation by failing to disclose to SBLS, the lender, the actual amount of debt owed by his client, PATRA, to Medallion Bank, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).
Charge two alleges that the respondent is guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation by failing to inform SBLS, the lender, that PMC would only be paid $300,000, rather than $679,000, the actual amount of the debt owed by PATRA to PMC, in violation of Code of Profes *103 sional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).
Charge three alleges that the respondent is guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation by signing the HUD-1 statement at the closing, despite knowing that the payments shown on the HUD-1 statement would not be made as specified, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [43).
Charge four alleges that the respondent is guilty of breaching his fiduciary duty by disbursing funds to entities not specified in the HUD-1 statement or in other documents associated with this transaction, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
Charge five alleges that the respondent is guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation by offering false testimony to the Grievance Committee that PMC had accepted the $300,000, and payments totaling $259,580.55 to third parties, as payment in full satisfaction of the debt owed by PATEA, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a) [43).
In view of the respondent’s admissions and the evidence ad-' duced at the hearing, charges one, two, three, four, and five should be sustained. Charge six should not be sustained.
In determining an appropriate measure of discipline to impose, we note that this matter arises from an unusual commercial loan transaction, which occurred 10 years ago. The respondent has no disciplinary history before or since. Nonetheless, the respondent executed a false HUD-1 statement and thereafter failed to disburse loan proceeds consistent with the false HUD-1 statement and/or the checks he drew at closing. Additionally, the respondent was not truthful in his written answer to the Grievance Committee when describing the satisfaction of PATRA’s debt(s) to PMC. Although the respondent asks that discipline be limited to a public censure, under the totality of the circumstances, the respondent is suspended from the practice of law for a period of one year (cf. Matter of DiPietro, 209 AD2d 97 [1995]).
Mastro, A.EJ., Rivera, Skelos, Dillon and Balkin, JJ., concur.
Ordered that the petitioner’s motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted to *104 the extent that charges one through five are sustained, and it is further,
Ordered that the respondent’s cross motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted to the extent that charge six is not sustained, and the cross motion is otherwise denied; and it is further,
Ordered that the respondent, Mark S. Grossjung, admitted as Mark Steven Grossjung, is suspended from the practice of law for a period of one year, commencing June 29, 2012, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 31, 2012. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (3), and (4) otherwise properly conducted himself; and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Mark S. Grossjung, admitted as Mark Steven Grossjung, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Mark S. Grossjung, admitted as Mark Steven Grossjung, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).